UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRELL JOHNSON,

Plaintiff,

-against-

BRADY CONDLIN, individually and as an employee of the State of New York,

Defendant.

25-CV-100 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Terrell Johnson brings this action against New York State Police Investigator Brady Condlin, alleging that a traffic stop constituted a false arrest and violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure. Presently before the Court is Defendant's Motion for Summary Judgment. For the reasons stated herein, the Court grants Defendant's motion in its entirety.

## BACKGROUND

The facts outlined below are taken from the parties' statements submitted pursuant to Local Civil Rule 56.1 and their accompanying exhibits. *See* ECF No. 24 ¶¶ 1–23 ("Joint 56.1"); ECF No. 24 ¶¶ 24–26 ("Def. 56.1"); ECF No. 30 ("Pl. 56.1"). Unless otherwise indicated, the Court only cites a 56.1 statement where (1) the parties have agreed the factual assertion is undisputed; and (2) the factual assertion is properly supported by a citation to the record. These citations include instances where a party does not truly "dispute" an assertion, but merely seeks to qualify or add their own "spin" to it. *See Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-12137 (JPC), 2023 WL 2745556, at *2 n.2 (S.D.N.Y. Mar. 31, 2023). The Court otherwise cites to the exhibits filed by the parties in connection with the instant motions and any relevant pleadings in this case. *Id.*

At all times relevant to this case, Defendant Brady Condlin was employed by the New York State Police ("NYSP") as an investigator and assigned to Troop K's Community Stabilization Unit. *See* Joint 56.1 ¶ 3. On March 14, 2024, Defendant recovered a firearm out of Plaintiff Terrell Johnson's pocket during an arrest that followed a traffic stop in Poughkeepsie, New York. *Id.* ¶ 14. The incident report for that arrest listed Plaintiff's offenses as including criminal possession of a controlled substance and criminal possession of a weapon. ECF No. 25-5 at 2, 8, 10. Following Plaintiff's arrest, Investigator Condlin received information from another NYSP investigator indicating that Plaintiff regularly carried a firearm while in Poughkeepsie. Joint 56.1 ¶ 15.

Approximately six months later, on the evening of September 3, 2024, Plaintiff Terrell Johnson was riding in the front passenger seat of a BMW (the "Vehicle") in Poughkeepsie, New York. *Id.* ¶ 1. Plaintiff's now-fiancé, Carlisha Murphy, was driving the Vehicle. *Id.* ¶ 2. At approximately 7:31 p.m., NYSP Trooper Patrick Ohlerich pulled behind Ms. Murphy's Vehicle and initiated a traffic stop on White Street in Poughkeepsie. *Id.* ¶¶ 4–5. Throughout the entirety of the stop, another police vehicle was stopped in front of the Vehicle, blocking Ms. Murphy's Vehicle from moving. *See* ECF No. 25-2 ("Ohlerich BWC") at 00:39–11:20. Defendant asserts that Trooper Ohlerich conducted the stop after observing Ms. Murphy failing to properly signal prior to making a turn. Def. 56.1 ¶ 24.

Trooper Ohlerich told Ms. Murphy that "the reason [she] was pulled over was because there was something wrong with [her] signal." ECF No. 26-1 ("Murphy Decl.") ¶ 7. Specifically, at the time of the stop, Trooper Ohlerich explained to Ms. Murphy that she used "a late signal," or in other words, that Ms. Murphy signaled "immediately" while turning, rather than "one hundred feet prior to [her] turn." Ohlerich BWC at 3:16–3:32. In Ms. Murphy's recall of events,

she states only that “[w]hen [she] put [her] left turn signal on and made a left turn, [she] was pulled over at the intersection of North White Street and Mill Street.” Murphy Decl. ¶ 6. She also adds that “nothing was wrong with [her] vehicle” and that her “signals were working and in perfect condition.” *Id.* ¶¶ 14–15.

One minute after the initial stop, Trooper Ohlerich returned to his vehicle, which was positioned behind the Vehicle, in order to run Ms. Murphy’s driver’s license. Joint 56.1 ¶ 5. At approximately 7:33 p.m., Investigator Condlin, wearing a backwards black baseball hat, arrived at the scene of the traffic stop to assist Trooper Ohlerich. *Id.* ¶ 6. Additionally, NYSP Investigator Michael Moore and two Poughkeepsie Police Department (“PPD”) detectives were also present at the scene. *Id.* ¶ 7.

Upon his arrival, Investigator Condlin initially remained next to Trooper Ohlerich’s vehicle. *Id.* ¶ 8. However, one minute later, Investigator Condlin began to walk toward the Vehicle. *See id.* ¶ 9. Investigator Condlin directed Plaintiff to exit the Vehicle, so that Condlin could frisk Plaintiff for weapons. *Id.* ¶¶ 10–11. Plaintiff exited the Vehicle without incident. *Id.* ¶ 12. No one told Plaintiff that he was under arrest. *Id.* ¶ 13. Ms. Murphy’s cell phone video shows that Defendant’s pat frisk of Plaintiff lasted no more than seventeen seconds.[1] *See* ECF No. 25-6 at 00:00–00:17.

After Investigator Condlin finished frisking the Plaintiff, he and Plaintiff continued to stand outside of the front passenger door of the Vehicle for approximately four minutes. Joint

[1] Defendant asserts that the pat frisk lasted approximately fifteen seconds. Def. 56.1 ¶ 26. In response and without any citation to the record, Plaintiff denies Defendant’s assertion and states that “[t]he *stop* lasted more than 15 seconds.” *See* Pl. 56.1 ¶ 26 (emphasis added). The Court notes Plaintiff’s failure to directly controvert Defendant’s assertion regarding the *pat frisk’s* length, and in any event, relies on video evidence to determine the pat frisk’s duration. *See* ECF No. 25-6 at 00:00–00:17.

56.1 ¶ 16. At approximately 7:40 p.m., Trooper Ohlerich finished checking Ms. Murphy's license and completed his investigation. *Id.* ¶¶ 17–18. Following this, Plaintiff, Investigator Condlin, and the other officers present remained standing outside of the Vehicle for approximately ninety more seconds. *Id.* ¶ 19.

During this time, Trooper Ohlerich returned Ms. Murphy's license and issued a verbal warning regarding the turn signal violation to Ms. Murphy. Ohlerich BWC at 9:40–10:32. Ms. Murphy then asked if she and Plaintiff "can . . . go." *Id.* at 10:31–10:33. In response, Trooper Ohlerich gestured at Plaintiff's conversation with the other law enforcement officers, and stated that they were doing an interview, but that Plaintiff and Ms. Murphy could leave once the interview was done. *See id.* at 10:33–10:36. Ms. Murphy responded by questioning the purpose of the interview, in light of the completion of the driver's license check. *Id.* at 10:36–10:45. The interview paused during Ms. Murphy's question. *See id.* Defendant responded to Ms. Murphy and then used a flashlight to look inside the Vehicle through the windows and rear windshield for approximately twelve to sixteen seconds. *Id.* at 10:45–11:02. A couple seconds later, Ms. Murphy asks if she and Plaintiff were "good" to leave. *Id.* at 11:06–11:10. Thereafter, at approximately 7:42 p.m., Ms. Murphy and Plaintiff returned to the Vehicle and left the scene. *See id.* at 11:11–11:20; Joint 56.1 ¶ 20.

In total, the September 3 traffic stop lasted approximately eleven minutes. Joint 56.1 ¶ 21. At no time was Plaintiff placed in handcuffs, and Defendant did not take anything from Plaintiff's possession, nor did he request that Plaintiff produce any documents. *Id.* ¶¶ 22–23. No citation was issued to Ms. Murphy. Pl. 56.1 ¶ 28.

On January 5, 2025, Plaintiff filed his Complaint in this action. ECF No. 1 ("Compl."). Plaintiff brings two claims, both under 42 U.S.C. § 1983: first, a false arrest claim, and second,

an unreasonable search and seizure claim. *Id.* ¶¶ 10–61. Plaintiff's claims arise only from the September 3, 2024 traffic stop, with no allegations regarding the March 14, 2024 arrest. *See* Compl. Plaintiff seeks $1,000,000 in compensatory and punitive damages, plus attorneys' fees and costs. *Id.* at 9.

On January 9, 2026, Defendant moved for summary judgment. ECF No. 22. Defendant also filed the parties' joint Rule 56.1 Statement, with Defendant's 56.1 Statement appended to the end of the Joint 56.1. ECF No. 24. On February 9, 2026, Plaintiff filed his opposition to the Motion for Summary Judgment. ECF No. 27 ("Opp."). On February 24, 2026, Defendant filed his reply. ECF No. 28. On May 27, 2026, Plaintiff filed his Counter Statement to Defendant's 56.1 Statement. Pl. 56.1.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322–23). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (cleaned up).

When the movant properly supports his motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record"

to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 312 (2d Cir. 1997)).

**DISCUSSION**

The Court considers Plaintiff's Fourth Amendment false arrest and unreasonable search and seizure claims together, and determines that claims arising from the initiation of the traffic stop and Defendant's pat frisk fail. Next, the Court similarly grants summary judgment for Defendant on Plaintiff's claims related to any prolonged duration of the stop.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Therefore, the Fourth Amendment protects against "arrest and detention without probable cause." *Hodge v. City of Mount Vernon*, No. 25-CV-2736 (JGLC), 2026 WL 637092, at *3 (S.D.N.Y. Mar. 6, 2026) (citing *Bailey v. United States*, 568 U.S. 186, 192 (2013)). Plaintiff's Fourth Amendment claims appear to be premised separately on the initiation of the traffic stop, Defendant's pat frisk, and the stop's duration. *See* Opp. at 7–10. Defendant is entitled to judgment as a matter of law as to all of Plaintiff's claims.

## I. The Initiation of the Traffic Stop Is Not Grounds for a Fourth Amendment Claim Against Defendant

Plaintiff maintains that Defendant violated his constitutional rights by following and then stopping the Vehicle. Opp. at 7–9. First, Plaintiff asserts that police officers followed him from his family member's house to the location of the traffic stop. Opp. at 7, 11; *see also* Murphy Decl. ¶¶ 2–3 (recounting that police officers followed Ms. Murphy and Plaintiff in the Vehicle from Plaintiff's mother's home before the September 3, 2024 traffic stop). However, even assuming that law enforcement did follow Plaintiff and Ms. Murphy from a family member's home, doing so would not violate Plaintiff's constitutional rights, because law enforcement may follow individuals on public roads without a warrant. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) ("A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."); *United States v. Weaver*, 1996 WL 554746, at *1 (2d Cir. Sept. 30, 1996) (summary order) ("Police surveillance does not itself constitute a search, and events thus observed may serve as the basis for lawful searches or arrests." (citing *Knotts*, 460 U.S. at 281)); *Paige v. New York City Police Dep't*, No. 10-CV-3773 (SLT), 2012 WL 1118012, at *4 (E.D.N.Y. Mar. 30, 2012), *aff'd sub nom. Paige-El v. Herbert*, 735 F. App'x 753 (2d Cir. 2018) ("Even surveillance activities conducted near but outside the curtilage of one's home[—]i.e., an area to which the intimate activity associated with the sanctity of one's home and the privacies of life is extended[—]do not violate one's Fourth Amendment rights." (citing *United States v. Hayes*, 551 F.3d 138, 145–46 (2d Cir. 2008))).

Next, Plaintiff maintains that the stated reason for pulling over the Vehicle—failure to signal—was merely a false pretext. *See* Opp. at 7–10 ("Defendant pretends that the stop was caused by Ms. Murphy's failure to put her turning signal on."); Pl. 56.1 ¶ 24 ("It was a pretext to search Plaintiff."). "It is well-settled in this Circuit that a traffic stop based on a reasonable

suspicion of a traffic violation comports with the Fourth Amendment." *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 295 (S.D.N.Y. 2020) (citing *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)). "The standard for reasonable suspicion is 'not high,' and is less than what probable cause requires." *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017) (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014)). "Courts tasked with determining the existence of reasonable suspicion must weigh the totality of the circumstances as they would appear through the eyes of a reasonable and cautious police officer, guided by his experience and training." *Hawthorne*, 492 F. Supp. 3d at 295 (citing *United States v. Singletary*, 798 F.3d 55, 60 (2d Cir. 2015)).

Here, New York Vehicle and Traffic Law Section 1163 requires that drivers signal a turn at least one hundred feet before an intersection. N.Y. Veh. & Traf. Law § 1163(b) ("A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning."). Although Plaintiff asserted in his 56.1 Statement that "Ms. Murphy denies failing to signal prior to making a turn," Pl. 56.1 ¶ 24, Ms. Murphy actually only stated in her declaration that "[w]hen [she] put [her] left turn signal on and made a left turn, [she] was pulled over at the intersection of North White Street and Mill Street," Murphy Decl. ¶ 6. She makes no statement as to *when* she engaged her turn signal. And, Plaintiff admitted in his deposition that he had "no reason to doubt" that Ms. Murphy failed to put a signal on prior to turning. ECF No. 25-1 at 37:21–38:5, 39:18–22. Plaintiff has therefore failed to create a genuine issue of material fact with respect to whether the stop was based on reasonable suspicion of a traffic violation.

Defendant also cannot be held liable for the initial traffic stop for a more basic reason: He was not the officer who stopped the Vehicle, and Plaintiff has put forth no evidence that he was

otherwise responsible for the September 3, 2024 stop. "Personal involvement is a prerequisite to a claim for damages against any officer in his individual capacity under 42 U.S.C. § 1983." *Timmins v. Toto*, 174 F. Supp. 2d 56, 60 (S.D.N.Y. 2001) (citing *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)). "To establish the personal liability of an officer, a plaintiff must prove that he or she was personally involved in or responsible for the misconduct." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 480 (E.D.N.Y. 2002) (citations omitted).

In this case, it is undisputed that Defendant was not even present at the time Trooper Ohlerich stopped the Vehicle. *See* Joint 56.1 ¶¶ 4, 6 (stating that Trooper Ohlerich initiated the traffic stop of the Vehicle on September 3, 2024, and that approximately two minutes afterward, Defendant arrived at the scene of the traffic stop to assist Trooper Ohlerich). There are no facts suggesting that Defendant was involved with the initiation of the traffic stop, or that at the time of the stop, he was even aware of its specific impetus. *See* ECF No. 25-3 at 25:21–26:8, 28:3–5 (stating, at his deposition, that Defendant did not "specifically know what the vehicle and traffic stop was for," but "[j]ust from listening to the body cam, it sounds like it was something involving the signal," and that "[t]he ultimate decision to stop the vehicle was made by the trooper").

In his opposition, Plaintiff argues that Trooper Ohlerich baselessly stopped the Vehicle because "Defendant staged a fake traffic stop for the sole purpose of searching Plaintiff." Opp. at 4; *see also id.* at 9. However, Plaintiff offers no evidence demonstrating that Trooper Ohlerich and Defendant agreed to fabricate the basis for the stop. *See* Opp. Plaintiff's bald assertion is insufficient to create a genuine dispute of material fact. *See Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (holding that summary judgment cannot be defeated by relying on allegations in the complaint, self-serving conclusory statements, or "mere assertions that

affidavits supporting the motion are not credible”). The temporal proximity of Defendant’s arrival to the traffic stop’s initiation is insufficient alone to support that Defendant caused, initiated, or was involved with the stop of the Vehicle.

Therefore, Defendant is entitled to summary judgment with respect to Plaintiff’s constitutional claims arising from the Vehicle’s stop.

## II. Defendant’s Pat Frisk Did Not Violate Plaintiff’s Fourth Amendment Rights

Plaintiff’s constitutional claim arising from his pat frisk after the vehicle stop also fails. The Supreme “Court has recognized that traffic stops are ‘especially fraught with danger to police officers.’” *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)). “[A] car-stop is especially hazardous and supports the need for added safeguards.” *United States v. Alexander*, 907 F.2d 269, 273 (2d Cir. 1990). *See also United States v. Patterson*, 25 F.4th 123, 143–44 (2d Cir. 2022) (discussing the danger inherent in vehicle stops).

Accordingly, once a vehicle has been lawfully stopped, police officers may order both drivers and passengers to step out of the vehicle pending completion of the stop. *See Johnson*, 555 U.S. at 331 (citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam); *Maryland v. Wilson*, 519 U.S. 408 (1997)) Additionally, occupants, “once outside the stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver “might be armed and presently dangerous.’” *Johnson*, 555 U.S. at 331 (quoting *Mimms*, 434 U.S. at 112).

“The test for reasonable suspicion is a ‘rather lenient’ one, which the Second Circuit has described as ‘not a difficult one to satisfy.’” *United States v. Echevarria*, 692 F. Supp. 2d 322, 333 (S.D.N.Y. 2010) (first quoting *United States v. Santana*, 485 F.2d 365, 368 (2d Cir. 1973); then quoting *United States v. Oates*, 560 F.2d 45, 63 (2d Cir. 1977)). An individual’s previous

history with law enforcement can properly contribute to an officer's reasonable suspicion that the individual is armed and dangerous. *See United States v. Muhammad*, 463 F.3d 115, 124 (2d Cir. 2006) (holding that a patdown was reasonable, in part, because "the officers also had identified [the defendant] from previous encounters as one who 'gets very agitated,' is not cooperative, and is 'likely to flee'").

Here, Defendant operated not on a "hunch," but on "articulable, operative facts" that suggested that Plaintiff might have been armed and dangerous. *See Singletary*, 798 F.3d at 60 (explaining that a "hunch" is "a conclusion derived from intuition in the absence of articulable, objective facts"). Six months prior to the September 2024 traffic stop, on March 14, 2024, Defendant "personally recovered a firearm out of Plaintiff's pocket during an arrest following a traffic stop in Poughkeepsie, New York." Joint 56.1 ¶ 14. Also, following this March 2024 arrest, Defendant "received information from another NYSP [i]nvestigator indicating that Plaintiff regularly carried a firearm on his person while in Poughkeepsie." *Id.* ¶ 15. Both of these facts are undisputed. *Id.* ¶¶ 14–15. Defendant also explained in his deposition that fear for his safety arose during the traffic stop because Plaintiff "is someone who is known to carry firearms," which "inherently is a danger for all of the officers on the scene." ECF No. 25-3 at 30:5–12.

In this context, where Defendant had recently arrested Plaintiff for possessing a loaded firearm while allegedly possessing narcotics with the intent to sell, ECF No. 25-5, and had recently been informed by another police officer that Plaintiff regularly carried firearms, ECF No. 25-3 at 42:1–44:11, Defendant had reasonable suspicion that Plaintiff was armed and dangerous. Particularly given the inherent danger of traffic stops, the pat frisk "was supported by objective and particularized facts sufficient to give rise to a reasonable suspicion that [Plaintiff] was armed and dangerous." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021); *see also*

*United States v. Santillan*, 902 F.3d 49, 59 (2d Cir. 2018) (describing a traffic stop as "fraught with danger for the officer" (citations omitted)). Thus, Defendant is entitled to summary judgment on Plaintiff's claims to the extent that they arise from the pat frisk.

## III. Any Arguable Prolongment of the Traffic Stop Did Not Measurably Extend the Stop or Constitute an Unlawful Seizure or False Arrest

The Supreme Court has established that "[f]or the duration of a traffic stop . . . a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Johnson*, 555 U.S. at 327 (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and to attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations and quotation marks omitted). "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (cleaned up). "Unrelated inquiries, while permissible, violate the Fourth Amendment where they prolong or add time to a traffic stop absent reasonable suspicion of a separate crime." *Hawthorne*, 492 F. Supp. 3d at 296. As the Supreme Court has made clear: "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, *so long as those inquiries do not measurably extend the duration of the stop*." *Johnson*, 555 U.S. at 333 (citation omitted) (emphasis added).

The Court determines as a matter of law that Defendant did not unlawfully prolong the stop. As the parties agreed in their Joint 56.1 Statement, the September 4, 2024 traffic stop in

total "lasted approximately 11 minutes."[2] Joint 56.1 ¶ 21. The undisputed facts indicate that Trooper Ohlerich stopped the Vehicle at 7:31 p.m., and at approximately 7:42 p.m., Ms. Murphy and Plaintiff got back into the Vehicle and left the scene. *Id.* ¶¶ 4, 20. Additionally, Trooper Ohlerich did not finish his investigation, which included checking Ms. Murphy's license, until 7:40 p.m., after which Plaintiff stood with Defendant and other officers for approximately ninety more seconds. *Id.* ¶¶ 18–19; Ohlerich BWC at 9:40–11:20.

Within those ninety seconds, Ms. Murphy asked Trooper Ohlerich if she and Plaintiff could leave the scene, but Trooper Ohlerich indicated that Plaintiff could not leave until Defendant's and other officers' "interview" of Plaintiff was complete. *See* Ohlerich BWC at 10:31–10:36. The video shows Defendant completing the interview several seconds later. During a back-and-forth between Ms. Murphy and the officers, Defendant peered through the Vehicle's windows and back windshield with a flashlight for approximately twelve to sixteen seconds. *Id.* at 10:45–11:02. A couple seconds later, Ms. Murphy asks if she and Plaintiff were "good" to leave. *Id.* at 11:06–11:10. At which point, Ms. Murphy and Plaintiff returned to the Vehicle and left. *Id.* at 11:11–11:20; Joint 56.1 ¶ 20.

These facts do not suggest that Defendant improperly prolonged the stop. Instead, they demonstrate that almost immediately after Trooper Ohlerich returned Ms. Murphy's driver's

---

[2] Contradictory to the Joint 56.1 Statement, Plaintiff argues in his Opposition, without citing to any facts, that "[t]he stop lasted more than 20 minutes." Opp. at 11. There are no facts to indicate that the stop was over twenty minutes. Videos from Trooper Ohlerich's body camera and Ms. Murphy's cell phone indicate that the traffic stop, from the inception of the stop to Ms. Murphy's and Plaintiff's return to the Vehicle, did last approximately eleven minutes. *See generally* Ohlerich BWC; ECF Nos. 25-6, 26-7. Furthermore, even if the stop did last for over twenty minutes, there are no law or facts to indicate that this longer duration *alone* would violate Plaintiff's Fourth Amendment rights. *See United States v. Gomez*, 877 F.3d 76, 90 (2d Cir. 2017) (holding that "the 'reasonableness of a seizure . . . depends on what the police in fact do,' rather than a comparison to the duration of a hypothetically expeditious seizure or the duration of a seizure in similar circumstances" (quoting *Rodriguez*, 575 U.S. at 357) (alteration in original)).

license, having completed his relevant checks, Plaintiff and Ms. Murphy left the scene. Other than completing Plaintiff's in-progress interview, the only other event that occurred was Defendant looking into the Vehicle. However, this conduct did not constitute a search. *See Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) (collecting cases),[3] and it was at least arguably tied to Defendant's earlier reasonable suspicion that Plaintiff was armed and dangerous.

This case is highly distinguishable from those where the Supreme Court and Second Circuit have found that a prolonged stop rises to the level of a constitutional violation. For example, in *Rodriguez*, after the officer attended to everything relating to the stop, the officer conducted a dog sniff of the vehicle without the driver's consent. 575 U.S. at 352. And in *Gomez*, the officer prolonged a traffic stop by asking the driver "unrelated investigatory questions" with no findings that the officer "had independent reasonable suspicion of a different offense." 877 F.3d at 93. Unlike in these cases, here, any additional conduct Defendant engaged in unrelated to Ms. Murphy's traffic offense was conducted alongside Trooper Ohlerich's work, or there was separate, reasonable suspicion to conduct it. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (finding no "cognizable infringement" of a driver's constitutional rights where one officer attended to the traffic violation while another officer simultaneously conducted a dog sniff).

Furthermore, even if this conduct could give rise to a constitutional violation, Defendant would be entitled to qualified immunity. "Government officials enjoy qualified immunity from

[3] For this reason, Plaintiff's unreasonable search claim fails. *See* Opp. at 10 (arguing that "Defendant did not have probable [cause] to . . . search the Vehicle") (cleaned up). However, there are no facts to suggest that law enforcement actually searched any of the interior of the Vehicle. Rather, in Plaintiff's deposition, he acknowledged that law enforcement only "looked in the car from the window with a flashlight a little bit [and] looked in the back from the outside." ECF No. 25-1 at 55:3–5; *see also* ECF No. 25-3 at 40:19–21 (Defendant testifying that law enforcement did not search the Vehicle).

suit under [Section] 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 607 U.S. 568, 571 (2026) (citing *Riva-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn*, 607 U.S. at 572 (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam)) (alteration in original). Here, Plaintiff fails to identify, and the Court has not found, a case involving similar circumstances.

Accordingly, Plaintiff's claim in this regard fails.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment in its entirety.

The Clerk of Court is directed to terminate ECF No. 22, enter judgment consistent with this Order, and close this case.

Dated: September 27, 2026
White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge